IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC BARKLEY, | : CIVIL ACTION NO. 1:20-CV-214 |
| Plaintiff | : |
| | : (Judge Conner) |
| v. | : |
| | : |
| C.O. BAUMGARDNER, *et al.*, | : |
| | : |
| Defendants | : |

**MEMORANDUM**

Plaintiff Eric Barkley ("Barkley"), an inmate confined at the State Correctional Institution, Benner Township, Pennsylvania ("SCI-Benner Township"), commenced this action pursuant to 42 U.S.C. § 1983 setting forth an Eighth Amendment excessive force claim. (Doc. 1). Named as defendants are the following individuals employed at SCI-Benner Township: Baumgardner, Snowberger, Ryder, Wipple, Miller, Berk, Guss, Moses, Knepp, Pope, and Duncko. Before the court are two Rule 12(b) motions (Docs. 10, 13) to dismiss filed by defendants Moses, Knepp, Pope, and Duncko. For the reasons set forth below, the motions will be granted in part and denied in part.

I.      **Factual Background & Procedural History**

On May 26, 2017, Barkley was eating lunch in the dining hall when a fellow inmate reached across Barkley's tray. (Doc. 1 at 8; Doc. 17 at 2). Barkley told the inmate not to reach across his tray again, an argument ensued, and both inmates stood up to fight. (Id.) Barkley and the other inmate eventually calmed down and the argument ended without a fight. (Id.)

Barkley alleges that defendant Baumgardener began yelling at him and ordered him to leave the dining hall.  (Id.)  Defendants Baumgardener and Newpher grabbed Barkley's arms, escorted him out of the dining hall, and shoved him against a wall.  (Id.)  Defendants Moses and Berk were standing outside the dining hall and witnessed Barkley being "manhandled."  (Doc. 17 at 2).  Defendant Berk ordered defendants Baumgardener and Newpher to place Barkley on the ground.  (Doc. 1 at 8; Doc. 17 at 2).  Barkley alleges that several officers arrived on the scene and began pulling and twisting his arms and legs and smashed his face into the concrete.  (Doc. 17 at 2).

Approximately seven minutes later, defendant Moses handcuffed Barkley's arms behind his back, and Moses and Knepp prepared to escort him to the restricted housing unit ("RHU").  (Doc. 1 at 8; Doc. 17 at 2).  During the escort, defendant Baumgardener taunted Barkley and defendant Guss lifted Barkley from behind and slammed him head first on the ground.  (Id.)  Barkley heard a "loud pop" and a sharp pain in his back, and yelled to the officers, "Y[']all broke my [b]ack."  (Doc. 17 at 2).  Defendants Guss, Newpher, Baumgardener, and several other officers put plaintiff on his stomach, knelt on his back, placed shackles on his ankles, and took him to the RHU.  (Doc. 1 at 8; Doc. 17 at 3).

Once he was in the RHU, an officer removed the shackles from Barkley's legs, put him in a strip cell, and removed his handcuffs.  (Doc. 1 at 9; Doc. 17 at 3).  A nurse arrived at the cell, took pictures of Barkley's injuries, and advised defendant Ryder that Barkley's injuries would not prevent him from complying with a strip

search. (Id.) Defendant Ryder entered the strip cell, informed Barkley that the entire process would be recorded, and advised him to cooperate with the strip search. (Doc. 17 at 3).

Barkley "believe[s]" that defendants Pope and Duncko entered the strip cell and ordered him to remove his clothes. (Id.) Barkley informed the officers that he was unable to remove his clothes due to his injuries, and the correctional officers left the cell. (Id.)

Defendant Wipple then arrived at the strip cell and ordered Barkley to comply with the officers' commands. (Doc. 1 at 9; Doc. 17 at 3). Barkley informed defendant Wipple that he was unable to comply. (Id.) Defendant Wipple allegedly told Barkley he would return with gas spray. (Id.) Approximately fifteen to twenty minutes later, defendant Wipple returned to the cell with several other officers dressed in riot gear. (Id.) Barkley alleges that he requested to speak with defendant Ryder. (Id.)

Defendant Ryder arrived at the strip cell and ultimately called medical. (Doc. 1 at 9; Doc. 17 at 3-4). Barkley was transported to an outside hospital, underwent x-rays of his spine, was diagnosed with displaced fractures of the cervical vertebrae, a hematoma on his brain, and was prescribed pain medication. (Doc. 1 at 9; Doc. 17 at 4). Barkley was later transported to a different medical facility where he underwent surgery to implant a metal plate and screws in his spine and neck. (Id.)

Defendants Moses, Knepp, Pope, and Duncko move to dismiss Barkley's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docs. 10, 13). In

response to defendants' motion, Barkley filed a motion (Doc. 17) for leave to amend the complaint wherein he seeks to correct the complaint in the following manner: (1) change the spelling of "Bumgardner" to "Baumgardener"; (2) change the spelling of "Neph" to "Knepp"; (3) substitute defendant Snowberger with correctional officer Newpher; and, (4) set forth allegations against defendants Moses, Knepp, Pope, and Duncko.  (Doc. 17 at 1).  The court will grant Barkley's motion to amend the complaint and construe his filing as a supplement to the complaint.

## II.      Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the

defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**III.** **Discussion**

Defendants Moses, Knepp, Pope, and Duncko seek dismissal from this action based on their lack of personal involvement in the alleged wrongs. Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on

the operation of respondeat superior." Evancho, 423 F.3d at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

Aside from listing sergeant Moses, and officers Knepp, Pope, and Duncko as defendants, the complaint does not set forth any allegations against these individuals. (See Doc. 1). In his supplement to the complaint, Barkley seeks to amend his claims against these defendants. First, he alleges that defendant Moses was standing outside the dining hall and witnessed Barkley being "manhandled." (Doc. 17 at 2). He further asserts that defendant Moses handcuffed him, defendants Moses and Knepp stood him up, and prepared to escort him to the RHU. (Id.) During this escort, defendants Baumgardener and Guss allegedly taunted and assaulted Barkley. (Id.) Taking the facts in the light most favorable to Barkley, the court finds that he has sufficiently pled a cause of action against defendants Moses

and Knepp.  If these two defendants witnessed the alleged assault and failed to intervene when they could have, they had sufficient personal involvement.  See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).  The court will therefore deny the motion to dismiss with respect to defendants Moses and Knepp.

Next, Barkley alleges that he "believe[s]" that defendants Pope and Duncko were in the strip cell and ordered him to remove his clothes.  (Doc. 17 at 3).  When Barkley informed Pope and Duncko that he was unable to remove his clothes due to his injuries, the correctional officers left the cell.  (Id.)  There are no further allegations against these defendants.  Barkley does not allege, in any way, that defendants Pope and Duncko used excessive force against him on May 26, 2017 or that they had any physical contact with him on that day.  In fact, he is not even certain that Pope and Duncko were the correctional officers who initially ordered him to remove his clothes.  Barkley has thus failed to allege sufficient facts to establish that these two defendants had any personal involvement in the violation of his rights.  The court will grant the motion to dismiss with respect to defendants Pope and Duncko.

## IV. Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim,

courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).  The allegations against defendants Pope and Duncko are factually flawed.  Despite Barkley's amendment of his claims against these defendants, he has nevertheless failed to state a plausible claim for relief.  The court concludes that granting Barkley another opportunity to amend his claims against Pope and Duncko would be futile.

**V.      Conclusion**

The motion to dismiss by defendants Moses, Knepp, Pope, and Duncko will be granted in part and denied in part.  The court will grant Barkley's motion to amend the complaint.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:       January 26, 2021