IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC BARKLEY,** | : | **CIVIL ACTION NO. 1:20-CV-214** |
| **Plaintiff** | : | |
| | : | **(Judge Conner)** |
| v. | : | |
| | : | |
| **C.O. BAUMGARDENER, SGT. MOSES,** | : | |
| **C.O. KNEPP, LT. RYDER, SGT.** | : | |
| **WIPPLE, C.O. MILLER, SGT. BERK,** | : | |
| **C.O. GUSS, C.O. NEWPHER,** | : | |
| | : | |
| **Defendants** | : | |

## **MEMORANDUM**

Plaintiff Eric Barkley ("Barkley") commenced this action pursuant to 42 U.S.C. § 1983 alleging that his rights were violated under the Eighth Amendment. (Docs. 1, 17). The remaining defendants are Correctional Officers Baumgardner, Moses, Knepp, Reiter, Whipple, Miller, Burk, Goss, and Newpher.[1] Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 55). We will grant defendants' motion and enter judgment in their favor.

---

[1] By memorandum and order dated January 26, 2021, we dismissed three defendants from this action—Correctional Officers Pope, Duncko, and Snowberger. (Docs. 18, 19).

I.    **Factual Background & Procedural History**[2]

At all relevant times, Barkley was housed at the State Correctional Institution at Benner Township ("SCI-Benner Township"). (Doc. 73 ¶ 1). The defendants are correctional officers employed by the Department of Corrections ("DOC") at SCI-Benner Township. (Id. ¶ 2).

On May 28, 2017, at approximately 11:06 a.m., Barkley threatened another inmate in the dining hall. (Id. ¶ 3). In response, defendant Baumgardner approached Barkley and ordered him to exit the dining hall. (Id. ¶ 4). Barkley continued to be verbally aggressive towards the other inmate, at which time defendant Baumgardner intervened and again ordered Barkley to exit the dining hall. (Id. ¶ 5). Defendants Baumgardner and Newpher then escorted Barkley out of the dining hall. (Id. ¶ 6). Barkley became combative and resisted when defendants Baumgardner and Newpher attempted to place Barkley against the wall outside of the dining hall. (Id. ¶ 7). Defendants Baumgardner and Newpher placed Barkley

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from defendants' Rule 56.1 statement of material facts. (Doc. 73). Barkley did not file a response to defendants' statement of material facts. The court accordingly deems the facts set forth by defendants to be undisputed. See LOCAL RULE OF COURT 56.1; see also Doc. 57 ¶ 4, Doc. 61 ¶ 4, Doc. 63 ¶ 4; Doc. 77 ¶ 3; Doc. 81 ¶ 3 (advising Barkley that failure to file a responsive statement of material facts would result in the facts set forth in defendants' statement of material facts being deemed admitted).

on the ground in front of the dining hall in order to regain control, and defendant Baumgardner handcuffed Barkley. (Id. ¶ 8).

Defendants Goss and Newpher then assisted Barkley to a standing position to escort him to the Security Level 5 Housing Unit. (Id. ¶ 9). At approximately 11:09 a.m., as Barkley was being escorted, he attempted to kick defendant Baumgardner. (Id. ¶ 10). As Barkley attempted to assault defendant Baumgardner, defendants Goss and Newpher took Barkley to the ground to regain compliance, and non-defendant correctional officer Kissell secured Barkley's legs with restraints. (Id. ¶ 11). At approximately 11:12 a.m., defendant Goss and non-defendant Dunkle assisted Barkley to his feet and escorted him to the Security Level 5 Housing Unit, which contains the Restricted Housing Unit ("RHU"). (Id. ¶ 12).

In the RHU, at approximately 11:28 a.m., Barkley was evaluated by medical personnel, non-defendant nurses O'Donnell and Bell. (Id. ¶ 13). Barkley would not comply with staff orders in the intake module, and at approximately 11:40 a.m., defendant Reiter entered the intake module to control the incident. (Id. ¶ 14). Nurse Bell took photographs of Barkley, including his face and the side of his head. (Id. ¶ 15). Nurse O'Donnell assessed Barkley for injuries and reported a two-centimeter superficial laceration on the side of Barkley's head. (Id. ¶ 16). Barkley refused treatment for the two-centimeter superficial laceration. (Id. ¶ 17). When Barkley complained of back and neck pain, nurse O'Donnell summoned Dr. Lightbourne, who evaluated Barkley in the RHU at approximately 11:35 a.m. (Id. ¶ 18). Barkley denied any other complaints or injuries at the time. (Id. ¶ 19). Upon

evaluation by Dr. Lightbourne, medical staff called 911 for an ambulance at approximately 11:50 a.m. (Id. ¶ 20). The ambulance arrived on institution grounds at approximately 12:04 p.m. (Id. ¶ 21). At approximately 12:24 p.m., Barkley was transported by ambulance to Mount Nittany Medical Center for further evaluation. (Id. ¶ 22).

Defendant Whipple was not involved in, nor a witness to, the use of force incident or Barkley's subsequent medical treatment. (Id. ¶ 23).

The DOC's inmate grievance procedures are set forth in Administrative Directive 804 ("DC-ADM 804"), titled Inmate Grievance System. (Id. ¶ 24). DC-ADM 804 provides, with regard to requesting relief in grievances: "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." (Id. ¶ 25). In accordance with this requirement, the inmate grievance form provides the following instruction: "[s]tate all relief that you are seeking." (Id. ¶ 26).

Barkley filed Grievance Number 680823, dated June 5, 2017, regarding the May 28, 2017 incident. (Id. ¶ 27). Barkley did not seek any relief, including but not limited to monetary damages, in his initial grievance. (Id. ¶ 28). Barkley later "requested permission to supplement" his initial grievance and attempted to request monetary relief. (Id. ¶ 29). The Corrections Superintendent's Assistant responded that Barkley's requested relief must be specific in his initial grievance. (Id. ¶ 30). On October 5, 2017, following an investigation, the Facility Grievance Coordinator denied Grievance Number 680823. (Id. ¶ 31). Barkley appealed the

4

denial of Grievance Number 680823 to the Facility Manager. (Id. ¶ 32). On November 14, 2017, the Facility Manager rejected Barkley's appeal and upheld the initial grievance response and noted that Barkley "do[es] not request any relief." (Id. ¶ 33). On February 8, 2018, the Secretary's Office of Inmate Grievances and Appeals issued a final decision denying Grievance Number 680823. (Id. ¶ 234).

Discovery has concluded and defendants now move for summary judgment. (Doc. 55). Barkley failed to respond to defendants' motion and the time for responding has now passed.[3] Therefore, the motion is deemed unopposed and ripe for resolution.

## II.     Legal Standard

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-

---

[3] Barkley was directed to file a brief in opposition to defendants' motion for summary judgment and was admonished that failure to file an opposition brief would result in defendants' motion being deemed unopposed. (Docs. 57, 61, 63) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F.Supp.2d at 315.

### III.   Discussion

Defendants argue that judgment should be entered in their favor because: (1) Barkley failed to exhaust his administrative remedies; (2) even if Barkley had properly exhausted, he cannot establish an excessive force claim or an inadequate medical care claim; and (3) defendants Reiter and Whipple lack personal involvement in any alleged wrongdoing. (See Doc. 74). We decide defendants' motion purely on the merits and do not reach the exhaustion issue.

#### A.   Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. See Wharton v. Danberg, 854 F.3d 234, 247 (3d Cir. 2017). There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates. An Eighth Amendment claim includes both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Under the objective prong, the court must consider "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Wilson, 501 U.S. at 298). However, "[w]hat is necessary to show

6

sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue." Id. The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." Wilson, 501 U.S. at 298.

    **1.** *Excessive Force Claim*

In an Eighth Amendment excessive force case, the inquiry "is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Not "every malevolent touch by a prison guard" violates the Constitution. Id. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)). To establish an Eighth Amendment excessive force claim, an inmate does not need to show that he suffered a significant, or even a more than *de minimis*, injury. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). Rather, the central issue is the force used by the officer, not the resultant injury. Flood v. Schaefer, 439 F. App'x 179, 182 (3d Cir. 2011).[4]

When determining whether a prison official has used excessive force, the court must consider the following factors: (1) the need for the application of force;

---

[4] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

(2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response  Whitley, 475 U.S. at 321; Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).

    Here, Barkley's claim ultimately fails because there is insufficient evidence for a reasonable fact finder to conclude that the use of force was maliciously and sadistically intended to cause harm to Barkley.  The undisputed facts and videotape evidence demonstrate that defendants resorted to force to effect compliance only after Barkley turned his back on the officers and attempted to kick an officer.  Force was used immediately after Barkley became combative, and he not only resisted but actively fought them.

    For the first and second Whitley factors, there is undisputed evidence of a need to use force, and a reasonable juror could not find that attempts to secure Barkley were unreasonable or excessive.  The surveillance video, sans audio, commences with defendants Baumgardner and Newpher escorting Barkley out of the dining hall after he argued with another inmate. (See Doc. 73-1 at 4; Doc. 73-2, Videotape Clip).  When defendants Baumgardner and Newpher attempted to place Barkley against the wall outside the dining hall, he resisted. (See id.)  Barkley was then placed on the ground and handcuffed. (See id.)  After he was handcuffed, defendants Goss and Newpher helped Barkley to a standing position. (See id.)  Once standing, Barkley almost immediately attempted to kick defendant

8

Baumgardner. (See id.) In response, defendants Goss and Newpher quickly took Barkley to the ground to regain control and he was placed in leg restraints. (See id.) The officers then walked Barkley to the RHU. (See id.)

For the third factor, the medical records indicate that the injuries inflicted here were more than *de minimis*. (Doc. 73-1 at 41-42; Doc. 73-3). The proper inquiry in an excessive force claim is not the severity of the injury caused, but the amount of force used and its justification. See Brooks, 204 F.3d at 108. Although Barkley sustained injuries during the incident, the videotape evidence confirms that Barkley was resisting and actively fighting with the officers. (See Doc. 73-2). The videotape evidence also confirms that the officers were not hitting Barkley, such that they were intending to harm him. (See id.) Barkley has not submitted any evidence to establish that his injuries were caused by anything more than the takedowns.

As to the fourth factor, there was a reasonable threat to the officers' safety, as well as the prisoner's safety. At first, Barkley was arguing with another inmate in the dining hall. (See Doc. 73-1 at 4). When officers attempted to restrain him outside of the dining hall, he resisted and then attempted to kick an officer. (See Doc. 73-2). The purpose in securing Barkley was to gain control over a combative inmate, and his subsequent resistance put his own safety, as well as the officers' safety, at risk.

As to the fifth factor, the record reflects that the force ceased when Barkley stopped resisting and the officers regained control. (See Doc. 73-2). Courts must

9

bear in mind that drawing a line as to where force should cease must be approached practically, "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,' making 'allowance for the fact that [ ] officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" Johnson v. City of Philadelphia, 837 F.3d 343, 350 (3d Cir. 2016) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)).

Where a video refutes an inmate's claims that excessive force was used against him, and the video evidence does not permit an inference that prison officials acted maliciously and sadistically, summary judgment is entirely appropriate. Tindell v. Beard, 351 F. App'x 591 (3d Cir. 2009); see also Allen v. Eckard, 804 F. App'x 123, 126 (3d Cir. 2020) (affirming the entry of summary judgment where no reasonable factfinder could conclude that the officer-defendants used excessive force because videotape evidence of the incident blatantly contradicted the plaintiff's version of events). The video footage of this incident would lead a reasonable trier of fact to find that defendants used the amount of force necessary to control Barkley under the circumstances. Tindell, 351 F. App'x at 596; see also Whitley, 475 U.S. at 319; Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000) (noting that even a prison officer's "over-reaction" to an inmate-caused disturbance would fall short of supporting a finding of excessive force where the totality of the circumstances indicated that the force was applied in a good faith effort to maintain order). No aspect of the video, or any other portion of the record,

supports an assertion that defendants acted maliciously or sadistically to cause harm.

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989). Barkley has wholly failed to meet this burden. Indeed, he has not opposed defendants' motion for summary judgment. Despite his failure to oppose the motion, it is clear on the record that defendants acted in a good faith effort to restore order and discipline. Defendants are therefore entitled to an entry of summary judgment on Barkley's Eighth Amendment excessive force claim.

    **2.**    ***Medical Care Claim***

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs. Id. at 104-05. To succeed on such a claim, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

Deliberate indifference occurs when prison officials "intentionally deny[ ] or delay[ ] access to medical care or interfer[e] with the treatment once prescribed."

Pearson, 850 F.3d at 534 (quoting Estelle, 429 U.S. at 104-05). A mere complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid [constitutional] claim of medical mistreatment[.]" Estelle, 429 U.S. at 106. Moreover, "mere disagreement as to the proper medical treatment does not support a claim of" deliberate indifference. Pearson, 850 F.3d at 535 (internal quotations omitted); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326 (3rd Cir. 1987). Rather, where there has been medical care, "we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." Id. As long as a physician exercises professional judgment, his or her behavior does not violate a detainee's constitutional rights. See Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

Barkley asserts that defendants were deliberately indifferent to his serious medical needs related to the injuries sustained in the May 28, 2017 incident. The record confirms that Barkley received immediate medical attention after the incident. (Doc. 73-1 at 41). When Barkley arrived at the RHU, he was evaluated by medical personnel and placed in a neck brace. (Id. at 39-40). A nurse took photographs of Barkley, and it was reported that he had a two-centimeter superficial laceration on the side of his head. (Id. at 39-41; Doc. 73-3). Barkley refused treatment for the laceration. (Doc. 73-1 at 39-40). Within seven minutes of arriving in the RHU, a doctor evaluated Barkley for complaints of back and neck

pain. (Id. at 39-41). Fifteen minutes later, medical personnel called an ambulance and Barkley was transported to an outside hospital for further evaluation. (Id.)

There simply is no evidence, at any point during the various events and medical interactions that transpired on May 28, 2017, that defendants intentionally denied Barkley medical treatment, delayed access to medical care, or interfered with any prescribed course of medical treatment. Moreover, the named defendants are correctional officers and are not trained members of the medical staff. Courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically based Eighth Amendment claims. See, e.g., Spruill v. Gillis, 372 F.3d 218, 236-37 (3d Cir. 2004); Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). Because Barkley was under the care of medical experts, the nonmedical defendants were justified in believing that he was in capable hands. Defendants are entitled to an entry of judgment in their favor on the Eighth Amendment medical care claim.

**B.     Claims against Defendants Reiter and Whipple**

Lastly, defendants Reiter and Whipple move for summary judgment based on a lack of personal involvement in the May 2017 conduct of which Barkley complains. (Doc. 74 at 14). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195,

1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208. A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. Id. at 1207.

With respect to defendant Reiter, the record reflects that he assisted in the RHU intake module by placing Barkley in handcuffs. (Doc. 73-1 at 4, 35). There are no further assertions against defendant Reiter, nor is there any additional evidence establishing his personal involvement. Regarding defendant Whipple, there is simply no evidence that he was involved in the incident or witnessed the incident. (See Doc. 73-1 at 4). Based on the record before the court, we conclude that these defendants were not personally involved in any wrongdoing whatsoever. Accordingly, defendants Reiter and Whipple are entitled to an entry of summary judgment.

## IV.     Conclusion

We will grant defendants' motion (Doc. 55) for summary judgment. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     December 21, 2022